Case No. 21-4126

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE TENTH CIRCUIT

————————————

In re Overstock Securities Litigation:

THE MANGROVE PARTNERS MASTER FUND, LTD.,
*Plaintiff-Appellant*,

v.

OVERSTOCK.COM, INC., GREGORY J. IVERSON,
PATRICK M. BYRNE, and DAVID J. NIELSEN,
*Defendants-Appellees*.

————————————

On Appeal from the United States District Court for the District of Utah,
No. 2:19-cv-00709, The Honorable Dale A. Kimball, Senior U.S. District Judge

———————————————————————————————

## APPELLEE'S RESPONSE BRIEF OF PATRICK M. BYRNE

———————————————————————————————

| | |
|---|---|
| ROBERT N. DRISCOLL | CORY A. TALBOT |
| ALFRED D. CARRY | HOLLAND & HART LLP |
| MCGLINCHEY STAFFORD PLLC | 222 S. Main Street, Suite 2200 |
| 1275 Pennsylvania Avenue NW, Suite 420 | Salt Lake City, UT 84101 |
| Washington, DC 20004 | (801) 799-5800 |
| (202) 802-9999 | ctalbot@hollandhart.com |
| rdriscoll@mcglinchey.com | |
| acarry@mcglinchey.com | HOLLY STEIN SOLLOD |
| | HOLLAND & HART LLP |
| | 555 17th Street, Suite 3200 |
| | Denver, CO 80202 |
| | (302) 295-8000 |
| | hstein@hollandhart.com |

*Attorneys for Defendant-Appellee Patrick M. Byrne*

March 30, 2022

**Oral Argument Requested**

# TABLE OF CONTENTS

Page

TABLE OF CONTENTS............................................................................. i

TABLE OF AUTHORITIES .................................................................... iii

GLOSSARY................................................................................................ vi

PRIOR OR RELATED APPEALS........................................................... vii

BASIS FOR SEPARATE BRIEF ..............................................................1

INTRODUCTION .......................................................................................1

STATEMENT OF THE ISSUES ON APPEAL.......................................12

STATEMENT OF THE CASE..................................................................13

SUMMARY OF ARGUMENT .................................................................14

ARGUMENT ............................................................................................14

I.  The District Court Properly Dismissed Plaintiff's Control Person
    Liability Claim Against Byrne Under Section 20(a) ..........................14

    A.  Plaintiff Failed to Establish a Primary Violation of the
        Securities Laws .........................................................................15

    B.  This Court may also Affirm the Dismissal of the Section 20(a)
        Claim against Byrne because the AC Alleges that Byrne was a
        Primary Violator, which Precludes Liability as a Control Person
        ...................................................................................................16

II. The District Court Properly Dismissed Plaintiff's Insider Trading
    Claim Against Byrne Under Section 20A...........................................17

i

A.    Plaintiff Failed to Establish a Predicate Violation of the Exchange Act ..............................................................................18

B.    Plaintiff is not a Contemporaneous Trader Because It Purchased Overstock Shares Three Days Before Byrne's Sales................19

CONCLUSION AND RELIEF SOUGHT ...............................................................24

STATEMENT REGARDING ORAL ARGUMENT ............................................25

CERTIFICATE OF COMPLIANCE......................................................................26

CERTIFICATE OF DIGITAL SUBMISSION .....................................................27

CERTIFICATE OF SERVICE ..............................................................................28

# TABLE OF AUTHORITIES

Page

## Cases

*Anderson v. Spirit Aerosystems Holdings, Inc.*,
  827 F.3d 1229 (10th Cir. 2016) .........................................................................9

*ATSI Commc'ns, Inc. v. Shaar Fund, LTD*,
  493 F.3d 87 (2d Cir. 2007) .............................................................................3, 4

*Buban v. O'Brien*,
  1994 WL 324093 (N.D. Cal. Jun. 22, 1994) .......................................................22

*Caprin v. Simon Transport. Servs.*,
  112 F. Supp. 2d 1251 (D. Utah 2000) ..................................................................5

*City of Phila. v. Fleming Cos., Inc.*,
  264 F.3d 1245 (10th Cir. 2001) ..........................................................................15

*Greebel v. FTP Software, Inc.*,
  194 F.3d 185 (1st Cir. 1999) ................................................................................6

*In re Advanta Corp. Sec. Litig.*,
  180 F.3d 525 (3d Cir. 1999) ...............................................................................16

*In re Aldus Sec. Litig.*,
  1993 WL 121478 (W.D. Wash. Mar. 1, 1993) .....................................................21

*In re AST Research Sec. Litig.*,
  887 F. Supp. 231 (C.D. Cal. 1995) ......................................................................21

*In re Capstead Mortg. Corp. Sec. Litig.*,
  258 F. Supp. 2d 533 (N.D. Tex. 2003) ................................................................17

*In re Crocs, Inc. Sec. Litig.*,
  774 F. Supp. 2d 1122 (D. Colo. 2011).................................................................18

*In re Cypress Semiconductor Sec. Litig.*,
  836 F. Supp. 711 (N.D. Cal 1993) ......................................................................21

*In re Enron Corp. Sec., Derivative & ERISA Litig*.,
    258 F. Supp. 2d 576 (S.D. Tex. 2003) .......................................................... 20, 21

*In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, & "ERISA" Litig*.,
    503 F. Supp. 2d 25 (D.D.C. 2007)...................................................................20

*In re FX Energy, Inc. Sec. Litig.*,
    2009 WL 1812828 (D. Utah Jun. 25, 2009).................................................. 5, 15

*In re MicroStrategy*,
    115 F. Supp. 2d 620 (E.D. Va. 2000) .......................................................... 20, 22

*In re Nature's Sunshine Prods. Sec. Litig*.,
    486 F. Supp. 2d 1301 (D. Utah 2007) ...........................................................15

*In re Oxford Health Plans, Inc. Sec. Litig.*,
    187 F.R.D. 133 (Jun. 8, 1999) ...................................................................20

*In re Sec. Litig. BMC Software, Inc*.,
    183 F. Supp. 2d 860 (S.D. Tex. 2001)...........................................................17

*In re Tyco Int'l, Ltd., MDL*,
    2007 WL 1703023 (D.N.H. 2007)...............................................................20

*Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co., Inc*.,
    32 F.3d 697 (2d Cir. 1994) .......................................................................16

*Johnson v. Aljian*,
    490 F.3d 778 (9th Cir. 2007) ....................................................................16

*Kalnit v. Eichler*,
    85 F. Supp. 2d 232 (S.D.N.Y. 1999) ...........................................................17

*Maher v. Durango Metals, Inc.*,
    144 F.3d 1302 (10th Cir. 1998) ..................................................................15

*O'Connor & Associates v. Dean Witter Reynolds, Inc.*,
    559 F. Supp. 800 (S.D.N.Y. 1983) .............................................................22

*Onel v. Top Ships, Inc.*,
    806 F. App'x 64 (2d Cir. 2020)................................................................ 16, 18

iv

*PR Diamonds, Inc. v. Chandler*,
  91 F. App'x. 418 (6th Cir. 2004)...........................................................17

*Smallen v. The Western Union Co.*,
  950 F.3d 1297 (10th Cir. 2020)................................................. 3, 4, 15

*Sterlin v. Biomune Sys.*,
  154 F.3d 1191 (10th Cir. 1998)...........................................................18

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ...........................................................................9

*W. Pa. Elec. Emps. Pension Fund v. Mentor Graphics Corp.*,
  2018 WL 4524107 (D. Or. May 29, 2018),
  *report and recommendation adopted* 2018 WL 3618365 (D. Or. Jul. 27, 2018),
  *aff'd*, 788 F. App'x 421 (9th Cir. 2019) ...............................................4

Statutes

15 U.S.C. § 78t.............................................................................. 15, 16

Regulations

17 C.F.R. § 230.144 .............................................................................10

Other Authorities

18 Donald C. Langevoort, *Insider Trading Regulation, Enforcement and Prevention*,
  § 9:3 (2020).......................................................................................23

3 Alan R. Bromberg, et al., *Bromberg & Lowenfels on Securities Fraud* § 6:390
  (2d ed., updated Dec. 2019)................................................................19

H.R. Rep. No. 100-910 (Sept. 9, 1988), *reprinted in* 1988 U.S.C.C.A.N. 6043, 6064
  .........................................................................................................22

Neil V. Shah, *Section 20A and the Struggle for Coherence, Meaning, and
  Fundamental Fairness in the Express Right of Action for Contemporaneous Insider
  Trading Liability*, 61 RUTGERS L. REV. 791 (2009) .............................22

# GLOSSARY

| | |
|---|---|
| AC | Plaintiff's Amended Consolidated Complaint |
| AOB | Appellant's Opening Brief |
| CC | Plaintiff's Consolidated Complaint |
| Exchange Act | The Securities Exchange Act of 1934, 15 U.S.C. § 78 et seq. |
| JA | Joint Appendix |
| PSLRA | Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 |
| SEC | U.S. Securities and Exchange Commission |

## PRIOR OR RELATED APPEALS

Plaintiff previously filed a notice of appeal in this matter under Case Number 20-4115. That appeal was rendered moot and closed when the district court granted Plaintiff's motion for leave to amend.

## BASIS FOR SEPARATE BRIEF

Defendant-Appellee Patrick M. Byrne ("Byrne") joins in all aspects of the appellee responsive brief filed by the remaining Defendants-Appellees Overstock.com, Inc. ("Overstock"), Gregory J. Iverson, and David J. Nielsen. However, Byrne writes separately to amplify certain arguments made by Overstock and to articulate the equally dispositive arguments that compel affirmance of the district court's dismissal of the claims that were asserted specifically against Byrne. Pursuant to 10th Cir. R. 31.3(B), undersigned counsel for Byrne therefore certifies that this separate briefing is necessary to clearly and completely present the issues on this appeal.

## INTRODUCTION

This appeal stems from the second dismissal of a complaint attempting to plead securities fraud claims against Overstock and three of its officers, including Byrne, based on allegations that they made false statements about the company's financial projections, and also manufactured a manipulative scheme to create a so-called "short squeeze" in Overstock's common shares, in violation of Sections 10(b), 20(a), and 20A of the Securities Exchange Act of 1934 (the "Exchange Act"). The district court dismissed all of these claims for failure to state a claim. It held that Plaintiff failed to meet the high pleading standards imposed by the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act

1

of 1995 ("PSLRA"). Now, Plaintiff—a well-known short-seller and pension fund known as The Mangrove Partners Master Fund, Ltd.—appeals the district court's judgment of dismissal. This Court should affirm.

Addressing the Section 10(b) claims, the district court correctly held that Plaintiff: (1) failed to plead particularized facts demonstrating Byrne knew his retail guidance was unattainable when it was provided; (2) failed to plead particularized facts giving rise to a strong inference of scienter; and (3) failed to plead particularized facts that Byrne deceived investors—deception being the gravamen of a market manipulation claim—in Overstock's July 2019 announcement that it would issue a digital dividend in the form of unregistered shares. Regarding Plaintiff's Section 20(a) and 20A claims, the district court also correctly dismissed these claims because, among other reasons, Plaintiff failed to plead a primary violation of Section 10(b).

As is often the case in securities fraud matters, the key fatal weakness in Plaintiff's Amended Consolidated Complaint ("AC") is the absence of sufficient allegations regarding scienter—that is, plausible allegations that Byrne knew his statements were false at the time he made them. It is scienter that separates the wheat of a valid securities fraud claim from the chaff of claims grounded on nothing more than the fact that, with the benefit of hindsight, past projections about future financial performance did not materialize as predicted. Without the strong

2

review of securities fraud matters at the pleadings stage to test the sufficiency of scienter allegations, virtually every missed earnings projection—in either direction—would result in discovery and trial. But the PSLRA and federal pleading standards require a plaintiff to go beyond rote recitations of the elements of a claim to plead specific facts from which a court can plausibly infer scienter. Here, none of the allegations demonstrates that Byrne "knew of or recklessly disregarded the falsity of the challenged [retail earnings guidance] statements," *Smallen v. The Western Union Co.*, 950 F.3d 1297, 1309-10 (10th Cir. 2020), or that Byrne "intended to deceive investors" regarding the digital dividend. *ATSI Commc'ns, Inc. v. Shaar Fund, LTD*, 493 F.3d 87, 102 (2d Cir. 2007).

With respect to Count 1, Plaintiff failed to plead that Byrne—or anyone else at Overstock—had actual knowledge that the adjusted guidance for 2019 regarding Overstock's online retail business was false. As discussed more fully in Overstock's appellee brief, the confidential witness allegations do not address whether Byrne knew that Overstock's guidance was "unattainable and based on 'flat out wrong' numbers." (AOB at 61.)[1] To the contrary, the AC alleges that

---

[1] In this brief, citations to the Joint Appendix are abbreviated "JA" and include the volume number and page number (*e.g.*, "1-JA-100" refers to the first volume at page 100). Citations to "¶ __" refer to the paragraphs in the AC. Citations to "AOB" refer to the Appellant's Opening Brief (ECF No. 24). Unless otherwise indicated, all emphasis is added and internal quotations are omitted.

Byrne "believed [Overstock] had a 50% chance of meeting or exceeding" the retail guidance and the guidance was his "best guess estimate." (¶¶ 231, 256; 4-JA- 937, 945.) These allegations refute any notion that Byrne knew it was "not possible" for Overstock to achieve its projections. *W. Pa. Elec. Emps. Pension Fund v. Mentor Graphics Corp.*, 2018 WL 4524107, at *16 (D. Or. May 29, 2018), *report and recommendation adopted* 2018 WL 3618365 (D. Or. Jul. 27, 2018), *aff'd*, 788 F. App'x 421 (9th Cir. 2019).

Plaintiff argues that "the magnitude of the miss and the abrupt change" in guidance demonstrates Byrne's scienter. (AOB at 62-63.) But this is "simply [a] variation of fraud by hindsight." *Smallen*, 950 F.3d at 1309-10. Further, Plaintiff's complaint contains no well-pled facts suggesting that Byrne knew of or disregarded information concerning search engine optimization performance when he spoke. *Id.*

With respect to Count 2, Plaintiff's complaint fails to plead that Byrne "intended to deceive investors by artificially affecting the market price of securities" through the dividend. *ATSI*, 493 F.3d at 102. Although the AC is full of allegations regarding Byrne's purported disdain for short sellers and supposed "admissions" that he intended to create a "short squeeze," Plaintiff does not allege Byrne misrepresented the description, nature, or terms of the dividend. Nor does Plaintiff allege that Byrne attempted to conceal the fact that the dividend would not

4

be registered, and thus not be immediately transferable. As the district court correctly observed, "Defendants could not manipulate the market via truthful statements" (8-JA-1828), and "Plaintiff has not pled any intent to deceive short sellers or the market as a whole with respect to the impact the dividend would have on short sellers" (8-JA-1833).

Plaintiff's reliance on Byrne's stock sales as proof of scienter is also misplaced. (AOB at 44-46.) As an initial matter, the "stock sale allegations have no independent significance" as they illustrate nothing "more than motive and opportunity which is insufficient under the [PSLRA]." *Caprin v. Simon Transport. Servs.*, 112 F. Supp. 2d 1251, 1259 (D. Utah 2000). But the stock sale allegations here also fail to bolster an inference of scienter.

Plaintiff alleges that, in May 2019, Byrne sold approximately 900,000 shares of Overstock shares for approximately $10.7 million. (¶ 88; 4-JA-895.) When asked about these sales, he stated publicly in a letter to shareholders that the sales were to "invest personally in blockchain projects" and "meet charitable pledges." (¶ 91; 4-JA-895.) Plaintiff alleges no facts contradicting Byrne's explanation. (*Id.*) Nor does Plaintiff allege facts demonstrating these sales were "dramatically out of line with prior trading practices." *In re FX Energy, Inc. Sec. Litig.*, 2009 WL 1812828, at *10 (D. Utah Jun. 25, 2009). To the contrary—and although Byrne sold slightly fewer shares before the Class Period in September 2018 (774,303)

5

compared to May 2019 (907,055)—Byrne's proceeds from his sales in September 2018 ($20 million) were nearly double that of his May 2019 sales ($10.7 million). (1-JA-195, at ¶ 6; 3-JA-544; and ¶¶ 211-13; 4-JA-931-32.)

Likewise, Plaintiff does not allege that Byrne's September 2019 stock sales—that is, the sales he made after resigning from Overstock—were based on material, nonpublic information. Short sellers and analysts already recognized the potential effect of the digital dividend, and the market had the "same information" as Byrne. (8-JA-1834; ¶¶ 109-12, and 145; 4-JA-900-913.) In fact, Plaintiff alleges that after his departure, "Byrne *did not* have access to up-to-the-minute information about the short squeeze or Overstock's stock price" (¶ 147; 4-JA-914), tacitly conceding that he did not trade on material, nonpublic information. Nor is it "unusual for individuals leaving a company . . . to sell shares." *Greebel v. FTP Software, Inc.*, 194 F.3d 185, 206 (1st Cir. 1999). Thus, as the district court observed, Byrne's "stock sale when he exited the company appears to have more to do with his exit than the dividend." (4-JA-855.)

Plaintiff next argues it has alleged scienter based on Byrne's purported flight to another country without an extradition treaty with the United States. (AOB at 46.) But the AC pleads no facts that Byrne's international travel—for a diving trip—had anything to do with the digital dividend. Rather Plaintiff attributes his departure to "salacious news stories" regarding his relationship with "Russian

6

agent Maria Butina," which is entirely unrelated to the alleged fraud. (¶ 10 and n.4; 4-JA-867-68.) Thus, as the district court concluded: "Byrne's alleged flight proves nothing about his state of mind with respect to the digital dividend. Byrne had a number of unrelated matters going on in his life at the time of his alleged flight that could have caused him to leave the country. It is pure speculation that he may have left the country because he believed he had engaged in securities fraud." (8-JA-1834.) Similarly, as the district court observed, the post-hoc SEC investigation does nothing to establish scienter at the time of the alleged misconduct. (*Id.*)

* * *

Plaintiff's entire fraud thesis just does not make a lot of sense. Indeed, Plaintiff's narrative and theory of liability are implausible in that they are built on a number of fallacies—whether factual, legal, practical, or otherwise.

First, Plaintiff is a short seller. Skeptical that a company will perform well in the market, short sellers sign contracts to borrow a company's shares from a brokerage predicting that the share price will be lower at the time the borrowed shares need to be repaid. Short sellers are fundamentally different from traditional investors in that they expressly do not have faith in a company's management or strategy. They are betting that the company's future is bleaker than it lets on, that the market has overvalued the company's shares based on overly optimistic projections by company management, and that the share price will drop when the

7

rest of the market eventually sees the "truth." If a short seller's predictions are right, they make a profit. If the short seller's predictions are wrong, they incur a loss by having to "cover" their short position by purchasing the shorted stock on the open market in order to avoid breaching their contractual obligations.

The notion that a sophisticated institutional short seller like Plaintiff was deceived by supposed overly optimistic earnings projections—which were discredited and rejected as demonstrated by its short position—is a fallacy. Plaintiff's short position is strong evidence that Plaintiff in fact did not believe the company's projections. Moreover, with respect to the digital dividend, the market immediately recognized the impact the announced digital dividend was likely to have on the share price, as Plaintiff's complaint concedes. (7-JA-1522-23, and 1528-29; and 4-JA-900-901.) Thus, Plaintiff does not and cannot plead it relied on or was deceived by Byrne or the company's statements.

Second, Plaintiff ignores the heightened pleading requirements and safe harbor provisions of the PSLRA, which are barely mentioned in Plaintiff's opening brief, much less rigorously applied. Much of Plaintiff's argument seems to take place in a legal landscape where the PSLRA does not exist.

Outside of the securities fraud context, it is sometimes sufficient for a plaintiff to provide general allegations that track the elements of a claim to defeat a motion to dismiss. But the PSLRA, Federal Rules of Civil Procedure, and federal

case law addressing securities claims have long recognized that securities fraud cases are unique. Merely stating guidance was "knowingly" unattainable when it was provided is not enough. Nor is it enough to rely on buzzwords, or to add "an array of conclusory adverbs," as Plaintiff does here when it claims Overstock and Byrne designed the dividend "exclusively" or "entirely" to harm short sellers. (8-JA-1827.) Rather, claims must be supported by facts. Under the PSLRA, scienter must be plausible and pled with particularized facts that give rise to a strong inference that is at least as cogent as any competing, nonculpable explanations for a defendant's conduct. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007). That inference of scienter "must be more than reasonable or permissible–it must be cogent and compelling." *Anderson v. Spirit Aerosystems Holdings, Inc.*, 827 F.3d 1229, 1236-37 (10th Cir. 2016). Those are precisely the kinds of allegations that are lacking here.

Third, the AC attempts to take advantage of irrelevant media coverage of Byrne, as well as personal blog posts that he authored after leaving Overstock, to cobble together a conspiracy theory and motive to defraud investors that defies common sense. For example, Plaintiff contends that the "locked up" digital dividend announced was a "hoax" and part of a scheme to personally enrich Byrne because he never intended for it to issue in the manner disclosed to investors. (AOB at 15.) Plaintiff simultaneously alleges that Byrne was aware that because

his relationship with "Russian spy" Maria Butina was becoming public, he would be leaving the company. (AOB at 8, 12.) Unexplained, however, is an answer to the obvious question: why would Byrne put into motion a plan to enrich himself, and then leave the company prior to its execution, thereby depriving him of the ability to see his supposed scheme through? Relatedly, why would remaining management at Overstock go forward with a supposed scheme to enrich Byrne alone after his resignation? The heightened pleading standards and PSLRA do not require courts to suspend disbelief and accept implausible or irrational claims.

Overstock's plan to issue a dividend in the form of unregistered Digital Series A-1 Preferred shares, subject to the trading restrictions and other rules and regulations that accompany unregistered shares, was not nefarious. (*See* 6-JA-1410.) It was simply a more cost-effective and less time-consuming way to issue the dividend under the federal securities laws. *See, e.g.*, 17 C.F.R. § 230.144. And as the district court confirmed, "[a] company may issue unregistered securities for any number of legitimate business purposes . . . . There is nothing inherently deceptive about issuing an unregistered security." (8-JA-1829.)

Fourth, Plaintiff attempts to evade the pleading requirement that it must plausibly allege that Defendants knew a statement was false or deceptive *when made*. For example, Plaintiff makes much of the fact that Overstock, after consulting with the SEC, delayed the issuance of the digital dividend and

eventually announced it was going to register the digital shares. (AOB 34-35.) However, this fact proves nothing. Overstock disclosed that there was both regulatory and technical uncertainty and there was risk that the planned dividend would not go forward. (¶ 286; 4-JA-955; *see also* 6-JA-1360.)[2] The fact that later discussions with the SEC—held after Byrne departed—resulted in registration of the digital shares proves the truth of Overstock's initial disclosures and warnings about the risks of issuance, not their falsity. Further, Overstock's statement that it "appreciate[s] the cooperation and guidance we are receiving from regulatory authorities" (AOB at 35 n.9) does not support an inference that the so-called "locked-up" feature of the dividend was unacceptable, and the district court held that no such inference was warranted (8-JA-1829).

As for Counts 3 and 4 of the AC, Plaintiff spends less than three pages addressing the Section 20(a) and 20A claims it asserted against Byrne. (AOB at 65-67.) Plaintiff contends the district court wrongly dismissed these control person

---

[2] In non-boilerplate risk disclosures, Overstock expressly disclosed that "***We could encounter a variety of challenges in connection with the issuance of our Series A-1 Preferred Shares as a dividend.***" (¶ 286; 4-JA-955; *see also* 6-JA-1360.) Elaborating, the company advised how accounts for the forthcoming digital dividend may not be "opened in a timely manner" due to the high volume of recipients. (*Id.*) Overstock added how the issuance of the digital dividend may "cause unforeseen issues." (*Id.*) Further, the company explained that "since we have not previously issued Series A-1 Preferred Shares on such a wide scale, we could encounter challenges related to . . . complying with . . . unforeseen legal and compliance issues." (*Id.*)

liability and insider trading claims. However, Plaintiff's arguments continue to run headlong into black-letter law that holds a plaintiff who purchases shares prior to the defendant's sale has no insider trading cause of action, and that control person liability claims against alleged primary violators fail as a matter of law.

In sum, Plaintiff is a sophisticated short seller. The federal securities laws are not insurance for an investor's bad investment strategy. Transmogrifying a Google search of Byrne's name into a fanciful conspiracy theory in which Byrne and Overstock conspired to manipulate the market—ironically permitting Byrne to sell his shares for a price less than he could have obtained on the day the supposed manipulative scheme started—comes nowhere close to the heightened pleading standards of the PSLRA.

Bedrock law extinguishes Plaintiff's claims. The district court's judgment of dismissal with prejudice should be affirmed.

## STATEMENT OF THE ISSUES ON APPEAL[3]

1.      Whether the district court properly dismissed the Section 20(a) control person liability claim against Byrne because the complaint failed to plead

---

[3] Byrne adopts and incorporates by reference Overstock's Statement of the Issues, Statement of the Case, Summary of Argument, and Argument, which all apply with equal force for Byrne, but specifically addresses herein the district court's judgment of dismissal as to Counts 3 and 4 of the AC.

the underlying Section 10(b) claim and because Plaintiff failed to plead sufficient facts that Byrne was anything more than a primary violator.

2.    Whether the district court properly dismissed the Section 20A insider trading claim against Byrne because Plaintiff failed to plead a predicate violation of the securities laws and because Plaintiff was not a contemporaneous trader.

## STATEMENT OF THE CASE

Regarding the procedural history of the secondary claims asserted against Byrne, Plaintiff filed its Consolidated Complaint (the "CC") against Defendants on March 13, 2020. (1-JA-35.) Byrne moved to dismiss the CC on May 12, 2020. (1-JA-172.) On September 28, 2020, the district court granted Byrne's motion to dismiss, finding that the CC failed to state a claim against Byrne under Section 20(a) and Section 20A. (4-JA-832.)

With leave to amend (4-JA-859), Plaintiff filed its amended complaint—the AC—against Defendants on January 11, 2021 (4-JA-861). The AC asserts the same secondary claims against Byrne as presented in the CC. (*Compare* CC at 1-JA-121, *with* AC at 4-JA-968-69.) On September 20, 2021, the district court again granted Byrne's motion to dismiss—this time granting dismissal of the complaint with prejudice—and entered judgment in his favor. (8-JA-1807, 1839.)

Because the district court found that the AC did not state a primary violation of Section 10(b) and that Byrne would be anything other than a primary violator,

13

Plaintiff could not state a Section 20(a) control person claim under Count 3. (8-JA-1836.) In addition, because the district court found that the AC did not allege a predicate violation, or that Byrne's stock sales were contemporaneous with any of Plaintiff's purchases, Plaintiff also could not state a Section 20A insider trading claim under Count 4. (8-JA-1836-37.)

## SUMMARY OF ARGUMENT

This Court should affirm the district court's judgment dismissing the AC with prejudice because (1) Plaintiff failed to satisfy the first element of a prima facie case under Section 20(a), *i.e.*, a primary violation of the securities laws, and (2) even if there had been an underlying violation of the securities laws, Plaintiff pled that Byrne was a primary violator, and thus he could not also be liable as a control person under Section 20(a). This Court should also affirm the judgment dismissing the Section 20A claim against Byrne because Plaintiff failed to plead a predicate violation of the securities laws and because Plaintiff was not a contemporaneous trader.

## ARGUMENT

### I.  The District Court Properly Dismissed Plaintiff's Control Person Liability Claim Against Byrne Under Section 20(a)

The district court dismissed the Section 20(a) claim against the individual defendants, including Byrne, because Plaintiff failed to satisfy the first element of a prima facie case under Section 20(a). Even if Plaintiff had pled a primary

14

violation of the securities laws, however, the lower court also dismissed this claim because Plaintiff pled Byrne was a primary violator and thus could not also be liable as a control person.

### A. Plaintiff Failed to Establish a Primary Violation of the Securities Laws

To state a prima facie case of control person liability under Section 20(a), "the plaintiff must establish (1) a primary violation of the securities laws and (2) 'control' over the primary violator by the alleged controlling person." *City of Phila. v. Fleming Cos., Inc.*, 264 F.3d 1245, 1270-71 (10th Cir. 2001) (quoting *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1305 (10th Cir. 1998)).[4] As this Court has recognized before, liability under Sections 20(a) is derivative of liability under Section 10(b) and thus, where a primary violation has not been adequately alleged, no cause of action for secondary or control person liability will exist. *See Smallen*, 950 F.3d at 1315 ("Control-person claims under Section 20(a) of the

---

[4] *See also, e.g.*, *In re Nature's Sunshine Prods. Sec. Litig.*, 486 F. Supp. 2d 1301, 1313-14 (D. Utah 2007) ("[L]iability may be imposed where a defendant possesses the power, directly or indirectly, to direct or cause the direction of management and policies of the primary violator."); *In re FX Energy*, 2009 WL 1812828, *7 ("Under Section 20(a), a person who 'directly or indirectly' controls any person who commits a violation of the securities laws may be held jointly and severally liable with the primary violator.") (quoting 15 U.S.C. § 78t(a)).

Securities Exchange Act of 1934, 15 U.S.C. § 78t(b), are predicated on some underlying primary violation of the securities laws.").[5]

Having failed to establish a primary violation of the securities laws as explained more fully in Overstock's appellee brief, the district court correctly ruled that Plaintiff failed to satisfy the first element of a prima facie case under Section 20(a). *See Onel v. Top Ships, Inc.*, 806 F. App'x 64 (2d Cir. 2020) (dismissing the secondary Section 20(a) and 20A claims for failure to state a claim for either market manipulation or a material misrepresentation or omission).

**B.    This Court may also Affirm the Dismissal of the Section 20(a) Claim against Byrne because the AC Alleges that Byrne was a Primary Violator, which Precludes Liability as a Control Person**

The control person liability claims against Byrne independently fail because Plaintiff cannot allege that Byrne is both a primary violator and yet secondarily liable as a control person. The AC alleges that Byrne was "100% responsible" for the digital dividend and alleged scheme as a primary violator, which precludes secondary liability as a control person. (¶¶ 19, 224; 4-JA-871-72, 935-36.) As the

---

[5] *See also Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co., Inc.*, 32 F.3d 697, 703 (2d Cir. 1994) (Section 20A claims "are derivative and therefore require an independent violation of the Exchange Act."); *In re Advanta Corp. Sec. Litig.*, 180 F.3d 525, 541 (3d Cir. 1999), *abrogated on other grounds by Institutional Investors Grp. v. Avaya, Inc.*, 564 F.3d 242, 276-77 (3d Cir. 2009) ("[C]laims under section 20A are derivative, requiring proof of a separate underlying violation of the Exchange Act."); *Johnson v. Aljian*, 490 F.3d 778, 781 (9th Cir. 2007).

district court correctly held, a Section 20(a) claim cannot be asserted against a defendant who is also charged with a primary violation of Section 10(b) and Rule 10b-5. (8-JA-1836.) That is, secondary liability under Section 20(a) is an alternative—not a supplement—to primary liability under Section 10(b) and Rule 10b-5. *See, e.g.*, *Kalnit v. Eichler*, 85 F. Supp. 2d 232, 246 (S.D.N.Y. 1999) (suggesting that plaintiffs could not allege primary liability against the directors of a corporation and at the same time allege control person liability against the directors); *In re Capstead Mortg. Corp. Sec. Litig.*, 258 F. Supp. 2d 533, 566 (N.D. Tex. 2003); *PR Diamonds, Inc. v. Chandler*, 91 F. App'x. 418, 442 n.4 (6th Cir. 2004) (acknowledging the foregoing authority without deciding the question). Accordingly, this Court should affirm the district court's dismissal of the control person liability claims in Count 3 as to Byrne.

## II. The District Court Properly Dismissed Plaintiff's Insider Trading Claim Against Byrne Under Section 20A

To state a Section 20A claim, a plaintiff must plead that a defendant "(1) used material, nonpublic information, (2) knew or recklessly disregarded that the information was material and nonpublic, and (3) traded contemporaneously with the [plaintiff]." *In re Sec. Litig. BMC Software, Inc*., 183 F. Supp. 2d 860, 916 (S.D. Tex. 2001) (citations omitted). Plaintiff's Section 20A claim is based on the assertion that Byrne used inside information to profit from the sales of his Overstock shares. However, Plaintiff cannot plead a violation of Section 20A

because, as the district court ruled, Plaintiff has not pled a predicate violation of the Exchange Act and Byrne did not trade contemporaneously with Plaintiff.

### A.    Plaintiff Failed to Establish a Predicate Violation of the Exchange Act

In order to recover under Section 20A, a plaintiff must first show an independent violation of the securities laws. *See Onel*, 806 F. App'x at 69 (dismissing the secondary Section 20(a) and 20A claims for plaintiffs' failure to state a claim for either market manipulation or a material misrepresentation or omission). This Court has not explicitly adopted a per se rule to this effect. *See In re Crocs, Inc. Sec. Litig.*, 774 F. Supp. 2d 1122, 1155-56 (D. Colo. 2011) ("The Tenth Circuit has not decided this issue explicitly.") (citing *Sterlin v. Biomune Sys.*, 154 F.3d 1191, 1194 n.5 (10th Cir. 1998) ("Courts have interpreted § 20A as requiring the plaintiff to plead a predicate violation of the 1934 Act or its rules and regulations . . . we need not discuss whether [plaintiff's] § 20A claim should survive dismissal of his § 10(b) claims")). However, district courts within this circuit have. *See, e.g.*, *In re Crocs Sec. Litig.*, 774 F. Supp. 2d at 1155-56 (collecting cases).

The AC alleges Byrne used material, nonpublic information to sell his Overstock common shares at inflated prices as the basis for Plaintiff's Section 20A insider trading claim. (¶ 336; 4-JA-969.) However, the district court correctly dismissed the Section 20A claim because Plaintiff failed to plead a predicate

18

violation of the securities laws for either material misrepresentation under Count 1 or market manipulation under Count 2. (8-JA-1836-37.) This Court should affirm dismissal of the Section 20A claim because the AC fails to satisfy the first requirement of a Section 20A claim against Byrne.

### B. Plaintiff is not a Contemporaneous Trader Because It Purchased Overstock Shares Three Days Before Byrne's Sales

Dismissal by the district court was also proper because Section 20A creates a private right of action only for contemporaneous traders. Plaintiff's purchases cannot be contemporaneous with Byrne's sales because Plaintiff purchased Overstock shares three calendar days *before* Byrne's transaction. *See* 3 Alan R. Bromberg, et al., *Bromberg & Lowenfels on Securities Fraud* § 6:390 (2d ed., updated Dec. 2019) ("[A] person who trades on the opposite side from insider is not contemporaneous if he trades before the insider[,] even [if] only a few hours before[.]").

The AC alleges that Plaintiff purchased Overstock common stock on September 19, 2019—3-5 days before Byrne's stock sales. Indeed, this is Plaintiff's *only* purchase during the class period. The AC contains the chart shown below illustrating this point:

| Defendant Byrne's Open Market Sales | | | Lead Plaintiff's Contemporaneous Purchase | | |
| --- | --- | --- | --- | --- | --- |
| *Sale Date* | *Shares Sold* | *Price per Share* | *Purchase Date* | *Number of Shares* | *Price per Share* |
| 9/16/2019 | 1,505,123 | $21.83 | 9/13/2019 | 138,535 | $27.57 |
| 9/17/2019 | 2,141,646 | $18.66 | | | |
| 9/18/2019 | 1,056,690 | $16.32 | | | |

(¶ 337; 4-JA-969.)

Courts have strictly construed this contemporaneous requirement, increasingly demanding that a plaintiff show it purchased stock on the same day on which the alleged insider sold stock. *See, e.g.*, *In re MicroStrategy*, 115 F. Supp. 2d 620, 663-64 (E.D. Va. 2000) (purchase of shares not contemporaneous with insider's sale three days earlier); *In re Tyco Int'l, Ltd., MDL*, 2007 WL 1703023 (D.N.H. 2007) (holding that purchases before defendant's sales were not contemporaneous); *In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, & "ERISA" Litig.*, 503 F. Supp. 2d 25, 47 (D.D.C. 2007) (same).

Plaintiff argues on appeal that the district court erred in dismissing the Rule 20A insider trading claim by finding Plaintiff is not a contemporaneous trader. (AOB at 65). Plaintiff argues Rule 20A does not define "contemporaneous" and that there is no consensus among federal courts on a definition. (AOB at 66.) Plaintiff insists contemporaneity is satisfied here and cites the following cases for support: *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 258 F. Supp. 2d 576, 599-600 (S.D. Tex. 2003) (holding that trades within less than a week are contemporaneous); *In re Oxford Health Plans*, *Inc. Sec. Litig.*, 187 F.R.D. 133, 144 (Jun. 8, 1999)

(within five days contemporaneous); and *In re Cypress Semiconductor Sec. Litig.*, 836 F. Supp. 711, 714 (N.D. Cal 1993) (same).

Not one of these cases, however, stands for the proposition that a plaintiff who trades *before* the purported insider can be a "contemporaneous" trader. Plaintiff's reliance on the *Enron* decision is particularly troubling. Plaintiff cites *In re Enron* for the proposition that trades within a week are contemporaneous. But the court in that case specifically held that a "plaintiff's trades must have taken place *after* the challenged insider trading transaction." *In re Enron*, 258 F. Supp. 2d at 600 (emphasis added). Thus *In re Enron* supports Byrne's position and contradicts Plaintiff's.

With stock trading heavily on a daily basis, courts have held that trades are not contemporaneous unless they take place on the same day. *See, e.g.*, *In re AST Research Sec. Litig.*, 887 F. Supp. 231, 234 (C.D. Cal. 1995) ("The same day standard is the only reasonable standard given the way the stock market functions."); *In re Aldus Sec. Litig.*, 1993 WL 121478, at *7 (W.D. Wash. Mar. 1, 1993). Indeed, scholars have noted that the modern trend is to apply a same-day requirement: "Consequently, it is unlikely that the same-day rule marks the end of the continual narrowing of the contemporaneity requirement under § 20A." Neil V. Shah, *Section 20A and the Struggle for Coherence, Meaning, and Fundamental Fairness in the*

21

*Express Right of Action for Contemporaneous Insider Trading Liability*, 61 RUTGERS

L. REV. 791, 814 (2009). As one oft-cited district court noted:

> [T]he modern realities of the securities markets support an increasingly
> strict application of contemporaneity in order at once to satisfy the
> requirement's privity-substitute function and to guard against making
> the insider liable to all the world.

*In re MicroStrategy*, 115 F. Supp. 2d at 663.

True enough, the drafters did not define "contemporaneous" within Section

20A. *See* H.R. Rep. No. 100-910, 27 & n.22 (Sept. 9, 1988), *reprinted in* 1988

U.S.C.C.A.N. 6043, 6064. Instead, they acceded to judicial development of the term.

*Id.* [6] In doing so, the House Report on the ITSFEA explicitly mentioned three Section

10(b) and Rule 10b-5 cases as guideposts for the federal courts in determining the

scope of the contemporaneous requirement. *Id.* One of those cases was *O'Connor &*

*Associates v. Dean Witter Reynolds, Inc.*, 559 F. Supp. 800 (S.D.N.Y. 1983), which

held that a plaintiff's contemporaneous trades must occur after defendant's trading on

material, nonpublic information. *Id*. at 803. That is, one cannot be a victim of fraud

until the fraudulent behavior occurs. *Id*. Thus, Section 20A creates a private right of

action only for contemporaneous traders, and one who trades before an alleged

insider is not a contemporaneous trader.

---

[6] *Buban v. O'Brien*, 1994 WL 324093, at *4 (N.D. Cal. Jun. 22, 1994) ("[The]
1988 House Report indicates that Congress specifically contemplated a case-by-
case approach to defining 'contemporaneousness.'").

Plaintiff insists that trading sequence is irrelevant because "the informational disadvantage is the same "whether the insider's trade comes first or last." (AOB at 67) (*citing* 18 Donald C. Langevoort, *Insider Trading Regulation, Enforcement and Prevention*, § 9:3 (2020).) In truth, Langevoort concludes the very opposite, noting that "a common question is whether a person who trades immediately before the insider's unlawful trading has standing to sue." *Id.* While he does offer his view that "there is no reason why not, since the informational disadvantage is the same, and literally, such trading is indeed 'contemporaneous,'" the author goes on to clarify that this view, which Plaintiff espouses, actually conflicts with the law:

> In [*O'Connor*], however, the court read [*Wilson v. Comtech Telecommunications Corp*., 648 F.2d 88 (2d Cir. 1981)] as requiring that plaintiff's trading occur after defendant's, presumably on grounds that until that point, there has been no breach of any duty to disclose. At present, then, that is the best guidance on that question.

*Id.*

Thus, as with the *In re Enron* case, the treatise supports Byrne's position, not Plaintiff's. While there is no binding law in this circuit on the issue of whether a plaintiff must trade after the insider's sales, this Court should follow the reasoning of the House Report and its reliance on *O'Connor* to affirm the district court's dismissal of Plaintiff's Section 20A insider trading claim against Byrne.

## CONCLUSION AND RELIEF SOUGHT

For the foregoing reasons, this Court should affirm the district court's

judgment, dismissing the AC with prejudice against Byrne.

Respectfully submitted this 30th day of March, 2022.

MCGLINCHEY STAFFORD PLLC

By: /s/Robert N. Driscoll
Robert N. Driscoll
Alfred D. Carry
1275 Pennsylvania Avenue NW, Suite 420
Washington, DC 20004
Tel: (202) 802-9999
Fax: (202) 318-1084
rdriscoll@mcglinchey.com
acarry@mcglinchey.com

HOLLAND & HART LLP
Cory A. Talbot
222 S. Main Street, Suite 2200
Salt Lake City, UT 84101
Tel: (801) 799-5800
Fax: (801) 799-5700
catalbot@hollandhart.com

and

Holly Stein Sollod
555 17th Street, Suite 3200
Denver, CO 80201
Tel: (303) 295-8000
hsteinsollod@hollandhart.com

*Attorneys for Defendant-Appellee*
*Patrick M. Byrne*

## STATEMENT REGARDING ORAL ARGUMENT

Defendant-Appellee Byrne agrees with Plaintiff-Appellant that oral

argument will be helpful in assisting the Court with the resolution of this appeal.

## CERTIFICATE OF COMPLIANCE

1.      This document complies with the length limitations of Fed. R. App. P.

32(a)(7) because, excluding the parts of the document exempted by Fed. R. App. P.

32(f) and 10th Cir. R. 32(B), this document contains 5,514 words over 24 pages.

2.      This document complies with the typeface requirements of

Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P.

32(a)(6) because this document has been prepared in a proportionally spaced

typeface using Microsoft Word in 14-point Times New Roman font.

Dated: March 30, 2022              /s/Robert N. Driscoll
                                   Robert N. Driscoll

                                   MCGLINCHEY STAFFORD PLLC
                                   1275 Pennsylvania Avenue NW, Suite 420
                                   Washington, DC 20004
                                   Tel: (202) 802-9950
                                   rdriscoll@mcglinchey.com

## CERTIFICATE OF DIGITAL SUBMISSION

1.    This document complies with the privacy redaction requirements of

Fed. R. App. P. 25(a)(5) and 10th Cir. R. 25.5 because there is no information

requiring redaction in this document.

2.    All hard copies to be submitted to the Court are exact copies of the

version submitted electronically.

3.    The electronically submitted version of this document was scanned

for viruses with the most recent version of a commercial virus scanning program

and is free of viruses.

Dated: March 30, 2022             /s/Robert N. Driscoll
                                  Robert N. Driscoll

                                  MCGLINCHEY STAFFORD PLLC
                                  1275 Pennsylvania Avenue NW, Suite 420
                                  Washington, DC 20004
                                  Tel: (202) 802-9950
                                  rdriscoll@mcglinchey.com

27

## CERTIFICATE OF SERVICE

I hereby certify that on March 30, 2022, I caused to be electronically filed a copy of the Appellee's Response Brief of Patrick M. Byrne with the Clerk of the Court by using the CM/ECF filing system, which will send notification of this filing to all counsel of record and registered users in this case. Pursuant to 10th Cir. R. 31.5, I further certify that I will cause seven hardcopies of the same to be sent via Federal Express to the United States Court of Appeals for the Tenth Circuit within five business days of the Court's issuance of notice that the electronic filing has been accepted.

Dated: March 30, 2022             /s/Robert N. Driscoll
                                        Robert N. Driscoll

                                        MCGLINCHEY STAFFORD PLLC
                                        1275 Pennsylvania Avenue NW, Suite 420
                                        Washington, DC 20004
                                        Tel: (202) 802-9950
                                        rdriscoll@mcglinchey.com